(No. 61675.—

GEORGE FITZPATRICK, Appellant, v. THE CITY OF CHICAGO *et al.*, Appellees.

*Opinion filed April 4, 1986.—Rehearing denied June 2, 1986.*

Ambrose & Cushing, P.C., of Chicago (John C. Ambrose and Richard A. Michael, of counsel), for appellant.

James D. Montgomery, Corporation Counsel, of Chicago (Philip L. Bronstein, Julie Elena Brown and Mary K. Rochford, of counsel), for appellees.

JUSTICE RYAN delivered the opinion of the court:

Plaintiff, George Fitzpatrick, brought suit in the circuit court of Cook County against defendants, the city of Chicago (the city) and Officer Theodore Ptak (Ptak), to recover for injuries he sustained when an automobile driven by Isaias Marin collided with Ptak's squad car. Defendants raised as an affirmative defense sections 2—202 and 2—109 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, pars. 2—202, 2—109) (hereinafter cited as the Tort Immunity Act). Section 2—202 provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton negligence," while section 2—109 provides that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."

The trial court, after finding as a matter of law that this affirmative defense was not available on the facts presented in the case, refused defendants' instructions and special interrogatories concerning governmental tort immunity and denied their motions for a directed verdict. The jury awarded plaintiff damages based on the defendants' negligence, the trial court denied defendants' motion for a judgment *n.o.v.*, and defendants appealed. The appellate court reversed the judgment and remanded the cause for a new trial. (131 Ill. App. 3d

582.) We granted plaintiff's petition for leave to appeal.

The events in question occurred at approximately 1 a.m. on February 23, 1980. The plaintiff, George Fitzpatrick, was driving northeast on the Stevenson Expressway when his car struck another driven by Leo Jefferson. The Jefferson auto came to a stop partially on the left shoulder and partially on the median strip between the northeast- and southwest-bound lanes of the expressway. Plaintiff parked his car on the southwest border of the median. Two passengers from the Jefferson auto began walking along the shoulder of the expressway to seek assistance in moving the car, which appeared to be stuck in mud.

Ptak testified that as he was driving southwest on the Stevenson Expressway he saw one car parked partially on the median and a second car parked on the side of the highway. He also recalled being approached by people walking along the highway. Ptak activated all of the emergency lights on his squad car, drove across the median, and parked a few feet behind the Jefferson auto with the front of the squad car facing oncoming traffic.

The testimony is in dispute as to whether the squad car was parked partially in a northeast-bound lane of traffic and as to whether Ptak turned off the squad car's emergency lights after parking.

Later, as Leo Jefferson, Ptak, and the plaintiff were examining the damage to the rear end of the Jefferson auto, a vehicle driven by Isaias Marin collided with the front of the squad car, pushing it backward and causing it to strike the plaintiff. At the time, plaintiff was standing between the squad car and the Jefferson auto. As a result of this second collision, plaintiff suffered injuries to both legs.

Plaintiff sued Marin, the city of Chicago and Ptak. Marin was never served, and the case proceeded with only the city and Ptak participating as defendants.

In their answer to plaintiff's complaint, defendants included a pleading entitled "Affirmative Defense." This pleading stated that sections 2—202 and 2—109 of the Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, pars. 2—202, 2—109) had been in effect at the time of the accident. The pleading also quoted the pertinent parts of the statutes and prayed for the dismissal of the complaint.

At the close of plaintiff's case and again at the close of all the evidence, defendants moved for a directed verdict based on the provisions of sections 2—202 and 2—109 of the Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, pars. 2—202, 2—109). Both motions were denied. The trial court also refused all instructions and special interrogatories tendered by the defendants regarding the Tort Immunity Act.

The appellate court reversed the judgment and remanded the cause for a new trial. (131 Ill. App. 3d 582.) In doing so, the court found that the defendants had not waived their affirmative defense based on the Tort Immunity Act. (131 Ill. App. 3d 582, 585-87.) The court reasoned that the affirmative defense was directed to the facts alleged in the plaintiff's complaint and there was no need for the defendants to restate the factual basis for this defense. (131 Ill. App. 3d 582, 586.) The court also noted that the plaintiff had waived his objections to the defendants' pleadings by failing to request the appropriate relief in the trial court. 131 Ill. App. 3d 582, 586-87.

The appellate court found that the evidence did not so overwhelmingly favor the plaintiff as to warrant what was, in effect, the trial court's directed finding that Ptak was not executing or enforcing the law at the time of his alleged negligence. (131 Ill. App. 3d 582, 589.) The court ruled that the defendants should have the opportunity to submit this issue to the jury and remanded the cause for a new trial. (131 Ill. App. 3d 582, 589.) As noted above,

we granted plaintiff's petition for leave to appeal pursuant to Rule 315(a) (94 Ill. 2d R. 315(a)).

Plaintiff first contends that the appellate court erred in ruling that the defendants had not waived the affirmative defense based upon sections 2—202 and 2—109 of the Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, pars. 2—202, 2—109). Plaintiff argues that the defendants failed to assert or incorporate even one fact that established from a pleading standpoint that these statutes were applicable to this case. He also maintains that the appellate court erred in holding that the facts alleged in his complaint, together with the quoted statutes, stated sufficient facts to constitute an affirmative defense. In essence, plaintiff argues that no affirmative defense was pleaded and the matter was therefore waived.

We find that defendants' pleading of their affirmative defense was sufficient. Section 33 of the Civil Practice Act (now section 2—603 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—603)) provides that "[p]leadings shall be liberally construed with a view to doing substantial justice between the parties." (Ill. Rev. Stat. 1979, ch. 110, par. 33(3); now Ill. Rev. Stat. 1983, ch. 110, par. 2—603(c).) At the same time, section 42 of the Civil Practice Act (now section 2—612 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—612)) states that "[n]o pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he is called upon to meet." (Ill. Rev. Stat. 1979, ch. 110, par. 42(2); now Ill. Rev. Stat. 1983, ch. 110, par. 2—612(b).) Finally, section 43 of the Civil Practice Act (now section 2—613 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—613)) provides:

"[F]acts constituting any affirmative defense, *** and any defense which by other affirmative matter seeks to avoid the legal effect of or defeat the cause of action set

forth in the complaint, \*\*\* and any ground or defense, whether affirmative or not, *which, if not expressly stated in the pleading, would be likely to take the opposite party by surprise, must be plainly set forth in the answer or reply.*" (Emphasis added.) Ill. Rev. Stat. 1979, ch. 110, par. 43(4); now Ill. Rev. Stat. 1983, ch. 110, par. 2—613(d).

When the provisions of the Civil Practice Act are viewed as a whole, the clear purpose of section 43 "is to facilitate the decision of cases on their merits, and to eliminate the harsh consequences which often stemmed from unfair surprise at trial prior to enactment of modern rules of procedure." *Darwin Co. v. Sweeney* (1982), 110 Ill. App. 3d 331, 333.

It cannot be said, under a liberal construction of this pleading, that the plaintiff was unfairly surprised by defendants' reliance on sections 2—202 and 2—109 of the Tort Immunity Act (Ill. Rev. Stat. 1983, ch. 85, pars. 2—202, 2—109) as an affirmative defense. The defendants apprised plaintiff of their intention by filing the pleading with their original answer to his complaint. Nor can it be said that under a liberal construction of the pleadings the plaintiff was not reasonably informed as to the nature of the defense which he was called upon to meet. Plaintiff's complaint alleged that Ptak was a policeman acting within the scope of his employment, which duties clearly included the execution and enforcement of traffic laws. The affirmative defense informs the plaintiff that defendants contend that Ptak's action falls within the Tort Immunity Act. Thus, the defendants' pleading was sufficient.

The cases cited in plaintiff's brief do not require a different decision. In both *Tomaso v. Plum Grove Bank* (1985), 130 Ill. App. 3d 18, and *Spagat v. Schak* (1985), 130 Ill. App. 3d 130, the defendants *totally failed* to plead affirmative defenses and then attempted to raise them at trial, thus surprising the plaintiff. (See *Tomaso*

*v. Plum Grove Bank* (1985), 130 Ill. App. 3d 18, 28-29; *Spagat v. Schak* (1985), 130 Ill. App. 3d 130, 134.) As noted above, these defendants, although they did not allege the specific acts for which immunity was claimed, pleaded the defense of the Tort Immunity Act as an affirmative defense to the allegations of the complaint.

Assuming, *arguendo*, that plaintiff's argument regarding the insufficiency of defendants' pleading of this affirmative defense is correct, we agree with the appellate court that plaintiff has waived this question by failing to object in the trial court.

This court has held that "[t]he objection that *** a plea does not state a defense, may be raised at any time, either before or after judgment. [Citations.]" (*Krachock v. Department of Revenue* (1949), 403 Ill. 148, 153; see also *Swager v. Couri* (1979), 77 Ill. 2d 173, 185.) However, this rule is true only where a pleading absolutely fails to state an affirmative defense, not where the defense is imperfectly pleaded. (*Lasko v. Meier* (1946), 394 Ill. 71, 73; *Auburn v. Amoco Oil Co.* (1982), 106 Ill. App. 3d 60, 63-64; see also Ill. Ann. Stat., ch. 110, par. 2—612, Historical and Practice Notes, at 299 (Smith-Hurd 1983).) In the latter instance, section 42 of the Civil Practice Act (now section 2—612 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—612)) provides that "[a]ll defects in pleadings, either in form or substance, not objected to in the trial court are waived." (Ill. Rev. Stat. 1979, ch. 110, par. 42(3); now Ill. Rev. Stat. 1983, ch. 110, par. 2—612(c).) Section 45 of the Civil Practice Act (now section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—615)) also provides that "[a]ll objections to pleadings shall be raised by motion. The motion shall point out specifically the defects complained of, and shall ask for appropriate relief ***." Ill. Rev. Stat. 1979, ch. 110, par. 45(1); now Ill. Rev. Stat. 1983, ch. 110, par. 2—615(a).

Again, this case does not involve an absolute or total failure to plead an affirmative defense; therefore, any objection to the sufficiency of the pleading should have been raised by motion in the trial court.

Plaintiff maintains that in remanding this case for a new trial, the appellate court gave too broad a reading to the phrase "in the execution or enforcement of any law" contained in section 2—202 of the Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, par. 2—202). Plaintiff argues that the Tort Immunity Act should apply only where the precise act alleged to be negligent is one of the "execution or enforcement" of a specific law. In this case, plaintiff argues the affirmative defense would only be available if Ptak was executing or enforcing a specific law by the act of parking his squad car.

As support for this interpretation, plaintiff points to our opinion in *Arnolt v. City of Highland Park* (1972), 52 Ill. 2d 27. In that case, we indicated that the words "in the execution or enforcement of any law" must be given their plain meaning. (52 Ill. 2d 27, 33.) We noted that under the plain meaning of this phrase, a police officer is not *ipso facto* engaged in the execution or enforcement of a law simply because he is on duty. (52 Ill. 2d 27, 35.) It was held in *Arnolt* that the determination of whether an officer is executing or enforcing a law is a factual one which must be made in light of the circumstances in each case. (52 Ill. 2d 27, 35.) Plaintiff argues that subsequent to this decision, the Illinois appellate court consistently interpreted the Tort Immunity Act to apply only where the precise, allegedly negligent, act was one of execution or enforcement. See *Vines v. City of Chicago* (1982), 110 Ill. App. 3d 1060; *Glover v. City of Chicago* (1982), 106 Ill. App. 3d 1066; *King v. City of Chicago* (1978), 66 Ill. App. 3d 356; *Newell v. City of Elgin* (1976), 34 Ill. App. 3d 719; *Anderson v. City of Chicago* (1975), 29 Ill. App. 3d 971.

We cannot agree with plaintiff's interpretation of the language of section 2—202 (Ill. Rev. Stat. 1979, ch. 85, par. 2—202). This court recently stated in *Thompson v. City of Chicago* (1985), 108 Ill. 2d 429, that "[e]nforcing the law is rarely a single, discrete act, but is instead a course of conduct." (108 Ill. 2d 429, 433.) We expressed the view that an interpretation of section 2—202 of the Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, par. 2—202) which granted immunity only where the specific, allegedly negligent act was one of execution or enforcement was "overly narrow." (108 Ill. 2d 429, 434.) Thus, where the evidence establishes that at the time of his alleged negligence a public employee was engaged in a course of conduct designed to carry out or put into effect any law, an affirmative defense based upon sections 2—202 and 2—109 of the Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, pars. 2—202, 2—109) should be available to the governmental employee and his employer.

In fact, when the evidence in such a case, viewed in its aspect most favorable to the plaintiff, so overwhelmingly establishes that the public employee was engaged in such a course of conduct that no contrary verdict based on that evidence could ever stand, a directed verdict must be granted in favor of the defendants. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) The defendants here argue that a judgment *n.o.v.* should be entered in their favor.

The uncontradicted testimony in this case makes it evident that a judgment should have been entered in favor of these defendants. At the time of the accident, Ptak was a Chicago police officer assigned to the traffic section of the department. His duties included enforcement of the traffic laws, and he was acting within the scope of his employment. Ptak observed two cars parked on the median of the expressway and saw people walking on the shoulder waving their arms at him. He acti-

vated the emergency lights on his squad car, including his mars lights, and drove across the median. He parked his squad car and was investigating the damage to the Jefferson auto when the second accident occurred. The only verdict which could stand based on this evidence was that Ptak was in the process of executing or enforcing the applicable traffic laws.

We note that contradictions did exist in the testimony presented at trial. However, these discrepancies related only to the question of whether Ptak was negligent, not to whether he was executing or enforcing any law. Thus, they have no effect on our decision to grant a directed verdict in favor of the defendants.

For the reasons stated above, we affirm that part of the judgment of the appellate court which reversed the judgment of the circuit court. However, we reverse that part of the judgment of the appellate court which remands this cause for a new trial. The cause is remanded to the circuit court of Cook County with directions to enter a judgment in favor of the defendants.

*Appellate court affirmed in part and reversed in part; circuit court reversed; cause remanded, with directions.*