EDWARD J. BOSEN, Ex'r of the Estate of Hermann Rupp, Deceased, Plaintiff-Appellee, v. THE CITY OF COLLINSVILLE, Defendant-Appellant.

Fifth District No. 5—86—0217

Opinion filed September 28, 1987.

KARNS, P.J., dissenting.

Coppinger, Carter, Schrempf & Blaine, of Alton (David W. Dugan, of counsel), for appellant.

Cadagin & Cain, of Collinsville (Richard R. Cain, of counsel), for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

The circuit court of Madison County sitting without a jury entered a judgment in which it found defendant, City of Collinsville, liable to the estate of Hermann Rupp for the negligent operation of a motor vehicle by one of the city's police officers. The defendant city

perfected the instant appeal, asserting that it cannot be held liable for the mere negligence of the police officer. Plaintiff has filed a cross-appeal in which he contends that the actions of the city's police officer constituted wilful and wanton misconduct rather than simple negligence. Since our determination on the merits of each appeal is dependent upon the applicability of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1983, ch. 85, par. 1—101 *et seq.*), we will discuss this matter first.

It is undisputed that at the time of the accident the city was a member of the Illinois Municipal League Risk Management Association (IMLRMA). In *Antiporek v. Village of Hillside* (1968), 114 Ill. 2d 246, 499 N.E.2d 1307, our supreme court held that the Intergovernmental Risk Management Agency (IRMA), which is apparently identical to the IMLRMA, is pooled self-insurance and does not subject its members to the waiver of those immunities (see Ill. Rev. Stat. 1983, ch. 85, par. 9—103(c)) granted to municipalities by the Local Governmental and Governmental Employees Tort Immunity Act. (*Antiporek*, 114 Ill. 2d at 251-52, 499 N.E.2d at 1309.) Consequently, the city can be held liable only if the instant accident resulted from the police officer's wilful and wanton conduct. See Ill. Rev. Stat. 1983, ch. 85, pars. 2—109, 2—202.

The facts pertinent to this determination are as follow: On Saturday, December 3, 1983, at 9:55 a.m., Collinsville police officer Robert Vecchetti was dispatched in his marked squad car to a private residence where a burglar alarm was sounding. Vecchetti was aware that this particular residence previously had sounded false alarms on six separate occasions. He proceeded south on Vandalia Street, then turned right and proceeded west on Clay Street with his emergency warning lights activated, using the siren intermittently. The traffic at this time was fairly heavy and the pavement was wet. Vecchetti testified that as he approached the three-way stop at the intersection of Clay and Hesperia Streets, he was braking and driving no more than 15 miles per hour. Less than 100 feet before he reached the intersection, Vecchetti noticed a red Falcon automobile proceed through the intersection southbound on Hesperia. Although Vecchetti tried to stop, he slid through the stop sign, into the intersection, striking the left rear quarter panel of the red Falcon. The impact of the collision forced the red Falcon with its driver, Hermann Rupp, partially onto the curb at the southwest corner of the intersection, causing injuries to Mr. Rupp and damage to his automobile.

Two eyewitnesses testified regarding Vecchetti's rate of speed. Mark Kaiser testified that while at the time of impact Vecchetti's ve-

hicle was travelling at 15 to 20 miles per hour, he estimated the speed of Vecchetti's vehicle at 350 feet from the intersection to be 50 miles per hour. Harold Schotter testified that when Vecchetti's vehicle went by him approximately one block from the collision, Vecchetti was travelling 30 to 40 miles per hour. Schotter related that shortly after Vecchetti passed, Vecchetti's brake lights went on. Both Kaiser and Schotter testified that the emergency lights were flashing on Vecchetti's vehicle prior to the collision. The speed limit on Clay Street was apparently 25 miles per hour.

■■ It is within the province of the trial court to determine the credibility of witnesses and the weight their testimony is to be given. A reviewing court has a duty to reverse the judgment of the trial court where it determines that the judgment is against the manifest weight of the evidence. In making this determination, the reviewing court must view the evidence introduced at trial and the inferences drawn therefrom in the light most favorable to the prevailing party. (*Sorenson v. Fio Rito* (1980), 90 Ill. App. 3d 368, 370-71, 413 N.E.2d 47, 50-51.) In contrast to an ordinary negligence claim, an action for wilful and wanton misconduct requires a showing that injury was caused intentionally or under circumstances exhibiting a reckless disregard for the safety of others. *Hough v. Mooningham* (1986), 139 Ill. App. 3d 1018, 1021, 487 N.E.2d 1281, 1284.

■ In the instant case while the trial court agreed that Vecchetti was driving in excess of the speed limit prior to braking for the collision, it found that Vecchetti's actions, although negligent, did not constitute wanton and wilful misconduct.

Plaintiff asserts in his cross-appeal that the trial court erred in finding that defendant's employee was not guilty of wilful and wanton misconduct. The evidence establishes that Vecchetti, while responding to a call that a burglary may be in progress, had his emergency warning lights activated and was using his siren intermittently. Moreover, Vecchetti did notice the Rupp vehicle proceeding into the intersection and Vecchetti did try to avoid the collision. We therefore conclude that Vecchetti's actions did not rise to the level of wanton and wilful misconduct as urged by plaintiff.

Therefore, the judgment of the circuit court of Madison County finding that Officer Vecchetti was guilty of simple negligence only was not erroneous and, as a consequence, the relief sought in plaintiff's cross-appeal is denied. However, that portion of such judgment assessing liability against the defendant city for the negligent conduct of Officer Vecchetti was erroneous; therefore, such judgment is reversed.

For the foregoing reasons, the judgment of the circuit court of Madison County in favor of plaintiff and against defendant is reversed.

Reversed.

LEWIS*, J., concurs.

PRESIDING JUSTICE KARNS, dissenting:

Sections 11—205(e) and 11—907(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, pars. 11—205(e), 11—907(b)) are express enactments that establish ordinary negligence as the standard of care in the operation of emergency vehicles by police officers.

Section 11—205(e) provides:

"(e) The foregoing provisions do not relieve the driver of an authorized emergency vehicle from the duty of driving with due regard for the safety of all persons, nor do such provisions protect the driver from the consequences of his reckless disregard for the safety of others."

Section 11—907(b) provides:

"(b) This Section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway."

In *Mayfield v. City of Springfield* (1982), 103 Ill. App. 3d 1114, 432 N.E.2d 617, and *Bouhl v. Smith* (1985), 130 Ill. App. 3d 1067, 475 N.E.2d 244, it was held that the ordinary negligence standard applies to operators of emergency vehicles.

The defendant City of Collinsville would be immune from liability only under the provision of section 2—109 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 2—109), which provides that a "local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." Inasmuch as the officer is not immune from liability for ordinary negligence, the City is not immune.

On the surface, *Thompson v. City of Chicago* (1985), 108 Ill. 2d 429, 484 N.E.2d 1086, and *Fitzpatrick v. City of Chicago* (1986), 112 Ill. 2d 211, 492 N.E.2d 1292, might seem to require a contrary holding; however, neither involves the operation of an emergency vehicle

---

*Justice Lewis replaces Justice Jones, who retired after the cause was taken under advisement.

on the public highways. In *Thompson*, the vehicle was being used in crowd control near a gate at the International Amphitheater in Chicago to prevent a minor riot. In *Fitzpatrick*, the vehicle was parked in a median at the scene of an accident. In both instances, the officers were in the act of "enforcing the law." Ill. Rev. Stat. 1985, ch. 85, par. 2—202.